UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:12-cr-00096-TWP-MJD-1 |
| ERIC Q. RICHMOND, | ) ) |
| Defendant. | ) |

**ORDER ON MOTION TO SUPPRESS**

This matter is before the Court on Defendant Eric Richmond's ("Mr. Richmond") Motion to Suppress (Dkt. 37). Specifically, Mr. Richmond seeks to suppress any and all evidence obtained from a warrantless search of his vehicle during a routine traffic stop and any statements made by Mr. Richmond prior to being read his *Miranda* rights. As a preliminary matter, the Court finds there is no material dispute concerning the facts and the motion raises a purely legal question; therefore no evidentiary hearing is required. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions of law. For the reasons set forth herein, the Motion to Suppress (Dkt. 37) is **DENIED**.

**I.   FINDINGS OF FACT**

On May 2, 2012, Deputy Nick Ernstes ("Deputy Ernstes"), of the Hancock County Sheriff's Department, was parked in a paved crossover near the 126–mile marker on Interstate 70 in Henry County, Indiana. At approximately 1:40 p.m., Deputy Ernstes noted that a maroon Chrysler was following too closely to the vehicle in front of it, in violation of Indiana Code § 9-21-8-14. The speed limit at the 126-mile marker on Interstate 70 is 70 mph. Deputy Ernstes checked the vehicle's speed twice, first registering at 67 mph and then at 65 mph. Deputy

Ernstes followed the vehicle and at the 132-mile marker on Interstate 70, he witnessed the maroon Chrysler accelerate to 75 mph to pass another vehicle. Deputy Ernstes then initiated a traffic stop which was recorded via a camera inside of his police car[1].

As Mr. Richmond began to pull over, Deputy Ernstes noticed Mr. Richmond was "moving around a lot," and his movement continued as Deputy Ernstes approached the car on the passenger side. When Mr. Richmond rolled down the passenger side window, Deputy Ernstes detected what he knew from his training and experience to be the smell of burnt marijuana. As Deputy Ernstes began to explain his reason for the traffic stop he observed several small pieces of a greenish-brown substance that looked plant-like and was located around the leather wrapping of the gear shift. Deputy Ernstes believed the substance to be marijuana.

Deputy Ernstes then requested Mr. Richmond's driver's license, which he was unable to produce because it had been confiscated due to another traffic violation in Illinois. Mr. Richmond did provide Deputy Ernstes with an Illinois state identification card and two traffic citations relating to the confiscation of his license. Deputy Ernstes then questioned Mr. Richmond on the location and purpose of his travels. Mr. Richmond stated he was going to Dayton, Ohio to help his mother move, but he could not provide his mother's address to Deputy Ernstes when asked.

After finishing his initial questions, Deputy Ernstes radioed Officer Jeff Glover ("Officer Glover") for assistance and asked Mr. Richmond to step out of the car. After exiting the car, Mr. Richmond made a furtive movement in Deputy Ernstes' direction. At that point Mr. Richmond was placed in handcuffs for officer safety. Officer Ernstes made the comment "I can see it and smell it" and Mr. Richmond can be heard saying "I was smoking weed earlier." In his motion, Mr. Richmond denies admitting to smoking marijuana and disputes there was any marijuana

---

[1] The Court has viewed the videotapes of both the stop and search on the scene and the custodial interview.

present in the car. Deputy Ernstes then placed Mr. Richmond into custody, and he and Officer Glover began to search Mr. Richmond's vehicle.

Upon searching Mr. Richmond's car, Deputy Ernstes noticed the screws in the molding of the center console had been manipulated. Upon further inspection, Deputy Ernstes found several bags each containing large cubed chunks of compressed powder hidden beneath the center console. A field test of the powder later revealed the substance was 289 grams of heroin. After finding heroin in the car Mr. Richmond was read his *Miranda* warnings, however, Mr. Richmond was not questioned on the scene.

In a subsequent video interview Mr. Richmond admitted the heroin found in the console was his, and he stated he was just trying to support his family. Furthermore, Mr. Richmond admitted that he smoked marijuana while traveling down interstate 65, that he was driving in excess of 70 miles per hour and that he obtained the heroin in Indianapolis before being stopped. Mr. Richmond further indicated he intended to transport and distribute the heroin in Chicago, Illinois.

In his motion, Mr. Richmond does not contest the fact that he committed one or more traffic violations prior to being stopped by Deputy Ernstes. He does, however, contend the evidence seized from his vehicle should be suppressed because it was obtained during a warrantless search that was not based on probable cause, thus violating the Fourth Amendment to the United States Constitution. Furthermore, Mr. Richmond argues all of his statements made prior to being advised of his right to remain silent pursuant to the Fourth and Fifth Amendments to the United States Constitution and *Miranda v. Arizona*, 483 U.S. 436 (1966) should be suppressed as well.

## II. LEGAL STANDARD

### I. Need for a Hearing

"District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." United States v. Curlin, 638 F.3d 562, 564 (7th Cir. 2011). In this instance, Mr. Richmond has not raised any disputed issue of material fact. Mr. Richmond has elected not to provide sworn facts or evidence to support his requested relief. The Government's evidence -- the advice of rights form, sworn statements of the police officers and videotapes of the stop, search, arrest and custodial interview-- is undisputed. Because there is no dispute about the material facts, no evidentiary hearing is required in this case.

### II. Fourth Amendment standard

Because a traffic stop constitutes a "seizure" under the Fourth Amendment, it is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). The reasonableness requirement extends not only to the initial stop, but also to its length. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). The products of an unconstitutional search are subject to suppression. *See, e.g.*, *United States v. Calandra*, 414 U.S. 338, 348 (1974). When a warrantless seizure has occurred, the Government bears the burden of proving compliance with the Fourth Amendment, by a preponderance of the evidence. *United States v. Garcia–Garcia*, 633 F.3d 608, 612 (7th Cir. 2011) (citation omitted).

## III.  DISCUSSION

### A. Validity of the initial stop

While Mr. Richmond argues his speeding violation was an "extremely minor one," he does not dispute there was probable cause for the traffic stop of his vehicle. Nor does Mr. Richmond argue the length at which Deputy Ernstes held him was unreasonable. Because Mr. Richmond does not argue the validity or length of Deputy Ernstes' initial traffic stop was unreasonable, the Court does not have to address the issue of whether it violated Mr. Richmond's Fourth Amendment rights. *See Whren*, 517 U.S. at 810 ("An automobile stop is . . . subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." (citation omitted)).

### B. Validity of the Search of the Vehicle

Mr. Richmond argues that after stopping his vehicle, Deputy Ernstes did not have probable cause to take him into custody or to search his vehicle and its containers and interior departments. Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), a police officer may conduct an investigatory traffic stop "if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed" and may conduct a search "even if the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred." *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006).

Following the proper traffic stop of the vehicle, Deputy Ernstes properly spoke with Mr. Richmond and learned he did not have a driver's license on his person, but did have a state identification card. *See United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005) ("[A]s part of

the stop, police may ask the vehicle's occupants a 'moderate number' of questions and request their identification." (citation omitted)). Because Mr. Richmond could not produce a valid driver's license due to confiscation for another traffic offense, Deputy Ernstes was justified in detaining him to conduct an investigation into whether Mr. Richmond was a licensed driver. *See United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) ("failure to produce a valid driver's license necessitated additional questioning while the trooper ascertained whether or not [defendant] was a licensed driver"). Furthermore, when Deputy Ernstes first approached Mr. Richmond's passenger side window he smelled the odor of burnt marijuana and saw a greenish-brown substance that appeared to be marijuana. Deputy Ernstes' detection of the odor of burnt marijuana in the vehicle justified a reasonable belief by the deputy that the vehicle contained contraband or evidence of criminal activity and constituted probable cause to search the vehicle. *See United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006). Based on all the evidence, Deputy Ernstes had probable cause to take Mr. Richmond into custody and search the vehicle. Therefore, Mr. Richmond's Fourth Amendment rights were not violated.

Mr. Richmond next argues the factual basis relied upon by Deputy Ernstes to support probable cause for the search of his vehicle is incorrect. Mr. Richmond denies there was any marijuana in his vehicle at the time of the stop, that he possessed any marijuana at the time of the stop, that he or anyone else had smoked marijuana in his car the day of the stop, or that he admitted to smoking marijuana prior to the stop. However, the videotape evidence shows otherwise.

And, even if Mr. Richmond's claims are true, the Government can still meet its burden that Deputy Ernstes had probable cause to search the vehicle. Even if Mr. Richmond did not admit to smoking marijuana in his car that day, and there was no marijuana in his car at the time

6

of the search, that does not mean Deputy Ernstes could not "reasonably [have] believed an offense occurred." *McDonald*, 453 F.3d at 960. Deputy Ernstes' suspicion that Mr. Richmond had committed the crime of smoking marijuana was based on his detection of the odor of marijuana coming from Mr. Richmond's car. Furthermore, Deputy Ernstes stated he saw a greenish-brown substance that resembled what he thought to be marijuana in plain view in Mr. Richmond's car. Deputy Ernstes determination that the odor of marijuana was in the car and his belief that the greenish-brown substance was marijuana came from his years of training and service as a police officer. Additionally, Mr. Richmond can be heard voluntarily making the statement "I was smoking weed earlier". There is nothing in the evidence to dispute that Deputy Ernstes' determinations were unreasonable or that he was being dishonest in his assessment. Based on Deputy Ernstes' determination that Mr. Richmond had marijuana in his vehicle, and the fact that Mr. Richmond did not have a valid driver's license, it is reasonable to believe that a crime was or was about to be committed. Therefore, the search of Mr. Richmond's car did not constitute a violation of the Fourth Amendment, and suppression of evidence found during the search is not appropriate.

Finally, once there was a positive indication that there were narcotics inside the vehicle, law enforcement officers had probable cause to search the vehicle. When there is probable cause to search a vehicle, law enforcement may search closed containers found in the automobile that may contain contraband that the police have probable cause to seek. *California v. Acevedo*, 500 U.S. 565, 572 (1991); *United States v. Ross*, 456 U.S. 798, 820 (1982); *United States v. Ledford*, 218 F. 3d 684, 688 (7th Cir. 2000) (search can extend to anywhere probable cause exists, including trunk); *United States v. Shelby*, 121 F. 3d 1118, 1121 (7th Cir. 1997) (probable cause to believe that drugs were hidden in arm rests).

## C. Suppression of Statements

The rule of *Miranda*, requires exclusion from evidence of any statements made by a suspect during a custodial interrogation unless the suspect was informed of, and waived, specified constitutional rights. *See, e.g.*, *United States v. Podhorn*, 549 F.3d 552 (7th Cir. 2008). *Miranda* doesn't govern only direct questions; it also covers "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). On the other hand, the *Miranda* rule doesn't require exclusion of volunteered statements that were not made pursuant to custodial interrogation. *United States v. Hendrix*, 509 F.3d 362, 374 (7th Cir. 2007); *United States v. Abdulla*, 294 F.3d 830, 835 (7th Cir. 2002).

Mr. Richmond contends he was a suspect in a criminal investigation, was in custody, and was interrogated prior to being advised of his rights, thus requiring suppression of any of his statements made before being advised of his rights. The only statement that could arguably fall under a *Miranda* analysis is the spontaneous statement when Mr. Richmond volunteered to Deputy Ernstes that he had smoked marijuana earlier that day. However, Mr. Richmond has presented no evidence that he was in custody when he volunteered this information. *See Berkemer v. McCarty*, 468 U.S. 420,441-42 (1984) (holding that, for purposes of *Miranda*, custody does not begin during a traffic stop until formal arrest, even if the driver's freedom had been restrained earlier in the process); *see also United States v. Gupta*, 183 F.3d 615, 617 (7th Cir. 1999).

Mr. Richmond's statements of admission to possessing the heroin, obtaining it in Indianapolis, and intending to transport it to Chicago to distribute were all voluntarily made and came after he was read his *Miranda* rights. Furthermore, Mr. Richmond has not produced any evidence to dispute the claim that these statements were voluntary and came after he was read his *Miranda* rights. Therefore, these statements are not subject to suppression.

## IV. CONCLUSION

For the foregoing reasons, Mr. Richmond's Motion to Suppress (Dkt. 37.) is **DENIED** as to the evidence found during the search of his vehicle and all of his other statements made after being read his *Miranda* warning.

**SO ORDERED.**

Date: 04/25/2013

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

Barry D. Glickman
OFFICE OF THE UNITED STATES ATTORNEY
barry.glickman@usdoj.gov